JANVIER, Judge.
Plaintiff Hubbs and defendant Bivelette own adjoining properties in New Orleans. This is a suit by Hubbs against Bivelette for his share of the cost of reconstructing a fence between the two properties.
At some time prior to October 16th, 1950, it became evident that .both owners desired to reconstruct the fence. On October 16th, 1950, counsel for plaintiff addressed to defendant a letter reading as follows:
“Mr. Clarence Bivelette
2219 Cadiz Street
New Orleans, La.
“Dear Sir:
“In reference to our conversation of the 14th of October, 1950, I will state opposition:
“First, as regards the shed, the wall on the property line is not a fence but a wall and, as such, is treated differently at law. The expense of its upkeep is borne entirely by the owner of the wall whose only duty is to see that it is in a safe condition which duty, I am sure, my client will fullfil.
“Now, that leaves not 120' but 112' of fence required of which your share is 56'. In the front, the law requires only a low fence from the sidewalk to the line created by the front of the house. Mrs. Hubbs is content to have the front 8' of iron fence left standing. This further reduces your share of construction t'o 52'.
“My client is willing to exchange promises to each construct 52' of seven board fence within 30 days after the agreement. Please inform me within the next few days if you are willing to so agree. I am sure we can settle this matter to everyone’ satisfaction without anyone’s resorting to law.
“Sincerely yours,
(signed) A. D. Freeman, Jr.”
On October 23rd, 1950, counsel for defendant answered that letter as follows:
“Mr. A. D. Freeman, Jr.
Attorney at Law
303 St. Charles St.
New Orleans, 12, La.
“Dear Sir:
“Your letter addressed to Clarence Bive-lette of 2219 Cadiz Street, has been turneo! over to me for attention and answer.
“My client is willing to have the fence between his property and your client’s property constructed.
“He does not want the iron fence to the front to remain, but desires that a legal fence be erected the entire length of the property.
“I shall be glad to discuss this matter with you, at your convenience if you care to do so.
“Very truly yours,
(signed) Rudolph F. Becker, Jr.”
Plaintiff obtained two .bids for the reconstruction of the fence, the lower of which was for $210.00, and he submitted these bids to counsel for defendant. No result being obtained and no agreement being reached, counsel for plaintiff wrote another letter to counsel for defendant, the date of which is not shown but which was obviously sent at some time prior to January 8th, 1950. This letter reads as follows:
“Rudolph F. Becker, Jr., Esq.
Maritime Bldg.
New Orleans, La.
“Dear Sir:
“Since November 1, 1950 I have repeatedly requested you t0‘ have your client, Clarence Bivelette, join with us to construct a boundary fence on the dividing line between his and my client’s property. The delay coupled with the fact that Miss Hubbs has had to seek police protection from your client persuades me that the time has come to assert our rights.
*200 “If Bivelette does, not join in signing a contract for the job before January 8th, 1950 we will do so, on the basis of fair bids, and resort to court action for compensation pf one half and costs.
“Yours very -truly,
(signed) A. D. Freeman, Jr.”
Failing to receive any further communication from defendant, plaintiff then called upon the successful bidder to proceed with the work 'but was informed that, because of the delay, the price would be increased since the cost of material and labor had risen. The bid was then raised to $245.00. The work was done; plaintiff paid the contractor, and has now brought suit against the defendant for $140.00, made up as follows : •
One-half the original bid, $105.00
Entire amount of increase, 35.00
Total, $140.00
Defendant answered admitting that, through his .attorney, he had discussed the construction of the fence, admitting that the fence had been constructed, 'but denying that “it was built in accordance with law,” and particularly averring that he had not been given the ten-day written notice “which is required to be done Under the law.”
There was' judgment in the First City Court, dismissing plaintiff’s suit, and she has appealed.
The “law” to which defendant referred in his answer is to be found in our Civil Code in Article 686, and in Ordinance No. 17,525 C.C.S. of the City of New Orleans. The particular portion of the codal article reads as follows: “Partition fences in cities — Contribution.—Every one has a right to compel his neighbor within the cities and towns, and their suburbs, of this State, to contribute to the making and repairing of the fences held in common, by which their houses, yards and gardens are separated, which shall be made in the manner in which is or may be prescribed by the regulations of the police bn this subject.”
The provisions of the applicable City Ordinance read as follows:
“4502. Everyone has a right to compel his neighbor to contribute to the making and repairing of the fences held in common by which their houses, yards and gardens are separated; * * *
“1) Whenever the owner óf a lot shall desire to enclose the same by a fence, he shall give notice in writing to the owner or owners of the adjoining lots of such desire, describing in said notice the premises to be enclosed and the character of the fence to be constructed and a refusal to join in the building of such party fence after expiration of ten (10) days from the delivery of such notice to such owner or owners, if they shall still neglect to join such petitioner in building such fence, such petitioner may proceed to build the fence as described in the petition and shall be entitled to recover from such owner or owners one-half (1/2) the cost of a substantial and suitable party fence; * * *
“2) A substantial and suitable party fence is considered to be a fence of one inch by twelve inches (l" x 12") feather edged boards nailed horizontally, seven (7) boards high across pine posts four inches by six inches (4" x 6"), no- more than eight feet (S') apart, set three feet (3') in the ground, with one-half. (1/2) of the total thickness of the fence on each side of the party line.”
While the City Ordinance was not formally offered in evidence, it was referred to during the trial below and the provisions of the ordinance were shown and quoted to the Judge of the First City Court.
The record shows without question that the fence was built in accordance with the provisions of the above-quoted City Ordinance, and the record leaves no doubt at all that, although possibly the technical written notice provided for in that ordinance was not given during October, defendant was put on notice at some time pri- or to January 8th, 1950, that if he did not agree to the construction of the fence, plaintiff would construct it.
 Under all the circumstances shown here, we conclude that defendant cannot avail himself of the defense that *201 he was not given the necessary notice, and that he is hable for his share of the cost of the fence.
However, since plaintiff voluntarily waited for more than two months after first demanding that the fence be constructed, she acquiesced in the delay and cannot place upon the shoulders of defendant the entire cost of the increase in the bid of the contractor. Her recovery should be limited to one-half of the amount, or $122.50.
The judgment appealed from is annulled, avoided and reversed, and there is now judgment in favor of plaintiff and against defendant in the full sum of $122.50, with legal interest from judicial demand; defendant to pay all costs,
Reversed.